217 So.2d 528 (1969)
MISSISSIPPI STATE HIGHWAY COMMISSION, Defendant/Appellant,
v.
Aubrey COHN and Rose T. Cohn, Plaintiffs/Appellees.
No. 45125.
Supreme Court of Mississippi.
January 6, 1969.
*529 Frederick C. Berger, Natchez, Joe T. Patterson, Atty. Gen., by Martin R. McLendon, Asst. Atty. Gen., Jackson, for appellant.
Brunini, Everett, Grantham & Quin, Vicksburg, Joe T. Drake, Port Gibson, for appellees.
PATTERSON, Justice.
This is an appeal by the Mississippi State Highway Commission from a judgment of $19,692.63 against it in the Circuit Court of Claiborne County in favor of Aubrey Cohn and Rose T. Cohn for damage to their land.
Aubrey Cohn, his wife and his mother, owners of a tract of land in Claiborne County through which the Natchez Trace Parkway was constructed, sued the Mississippi State Highway Commission for breach of contract and resultant damages due to its failure to provide cattle underpasses beneath the parkway. This breach, it was alleged, amounted to a taking by the defendant of certain property rights and interests therein of the plaintiffs without just compensation.
The case was presented and submitted to the jury on the theory of breach of contract. However, the highway commission's first defense was that of a demurrer which was made a part of its answer. The action of the trial court in overruling this demurrer is assigned as error. Since it is our opinion that the issues raised by the demurrer are dispositive of the suit, we do not elaborate upon the other assignments of error. The declaration alleges, excluding its formal parts, the following for the plaintiffs' cause of action:
III.
That Defendant has * * * appropriated * * * certain property rights and interests of Plaintiffs, without just compensation. * * *

*530 IV.
That Defendant * * * was obligated to acquire * * * certain lands which were * * * to be conveyed to the United States * * * for the Natchez Trace Parkway. * * *
V.
That on the 17th day of August, 1956, after negotiations * * * there was executed a warranty deed, conveying to the State * * * land for the * * * Parkway by Plaintiffs.
VI.
That among the provisions of said conveyance was a provision that certain cattle underpasses would be constructed at * * * the purpose of this being that * * * the grantors * * * owned properties on both sides * * * of land so conveyed, that * * * access would be given * * * livestock and for farm * * * equipment; and also the parties were orally assured that the underpasses would be sufficient for the passage * * * on the basis of these representations * * * they executed the deed. * * *
VII.
* * * by instrument dated February 1, 1963, the State of Mississippi conveyed to the United States Government. * * *
IX.
That by the * * * conveyance by the State * * * to the United States * * * the Defendant did cause the wording * * * regarding the cattle underpasses to be changed, so that there was conveyed * * * to the United States * * * rights not included in the deed to the State * * * in that the deed to the United States * * * did not provide for cattle underpasses to be constructed * * * as provided for in the deed to the State * * * and in the representations made by the Defendant; but rather provided only that the adjoining land owners could use certain drainage structures as cattle underpasses;
X.
* * * said drainage structures which were supposed to be * * * cattle underpasses have been completed * * * as constructed * * * are inaccessible * * * of driving cattle * * * or for passage of farm vehicles * * * are filled with dirt * * * and otherwise are completely unusable for the purposes provided in the deed by the Plaintiffs * * * to the State * * * and are contrary thereto and * * * to the representations made by Defendant to the grantors. * * *
XI.
That by reason of the * * * location and construction of the * * * structures, * * * Plaintiff's lands have been damaged * * * even though the same is in accordance with the terms of the deed from the State * * * to the United States * * * the latter having constructed the same so that they were not in violation of the terms of the deed to it; (Emphasis added.)
XII.

That by reason of the positive action of the State of Mississippi * * * in executing said deed changing the terms thereof, that Defendant has appropriated * * * the rights and properties of Plaintiffs, and no compensation has been paid therefore. * * * (Emphasis added.)
An amendment was made to the declaration which alleged that additional oral assurances were made in the course of negotiations with regard to the size of the cattle underpasses and that the plaintiffs relied thereon as they did not have full information regarding the construction plans and details of the structures.
*531 A copy of the deed from the plaintiffs to the State of Mississippi was attached as an exhibit to the declaration as was the deed from the State of Mississippi to the United States. The gist of the declaration is the "positive action of the State of Mississippi * * * in executing said deed changing the terms thereof * * *" contrary to the terms of the deed and the oral assurances of the defendant.
The demurrer interposed by the defendant of course admits all things well pled within the declaration for the purpose of determining whether a cause of action has been stated. The allegations within the declaration referring to oral assurances, reliance on oral representations made by the agents of the defendant, and the beliefs of the plaintiffs stemming therefrom, are thus admitted if in fact they are well pled.
By numerous decisions of this Court the prior negotiations of parties become merged in the contract of conveyance when it is executed. West v. Arrington, 183 So.2d 824 (Miss. 1966); Brown v. King, 214 Miss. 437, 58 So.2d 922 (1952); and State Highway Department v. Duckworth, 178 Miss. 35, 172 So. 148 (1937). In the absence of fraud or mutual mistake, and none is here alleged, parol evidence directed to the prior oral representations could not have been introduced at the trial to vary the terms of the deed by the plaintiffs to the defendant. Since these allegations are incapable of proof by evidence, they are not well pled. Bower v. Chess & Wymand Co., 83 Miss. 218, 35 So. 444 (1903).
Aside from the above the terms of the deed by the plaintiffs to the defendant contravene the allegations of the declaration to which it is an exhibit, as one of its provisions is the following:
It is further understood and agreed that this instrument constitutes the entire agreement between the Grantors and the Grantee, except as provided herein, there being no oral agreement or representations of any kind.
The rule is well settled that the contents of an exhibit to a declaration control over the allegations thereof if there is a conflict between the two. Paulk v. Housing Authority of the City of Tupelo, 195 So.2d 488 (Miss. 1967); Williams v. Wilson, 241 Miss. 155, 129 So.2d 125 (1961); and North American Life Ins. Co. v. Smith, 178 Miss. 238, 172 So. 135 (1937). For the above reasons, either merger or conflict, it is our opinion that the allegations of oral representations are not well plead and cannot be considered by this Court in passing upon the sufficiency of the declaration.
The terms of the deed to the defendant disclose that it was for a total consideration of $38,827.50 and that this amount was in full payment of the grant as well as for settlement of any claims for damages accrued or to accrue to the grantors on account of the construction of the parkway or any other damages, rights, or claims whatsoever. The recitation in the deed which it is alleged the defendant (here the grantee) varied in its subsequent conveyance to the United States is:
It is further understood and agreed that the United States will construct the following cattle underpasses to lands on both sides of the Parkway owned by the Grantors herein: (Emphasis added.)
1. A minimum 8 feet wide by 6 feet high concrete box structure opposite "P" line Station 397 + 00, more or less.
2. A minimum 4 feet wide by 6 feet high concrete box structure opposite "P" line Station 425 + 00, more or less.
* * * * * *
It is understood and agreed that the Grantors herein shall have the right to use as an agricultural underpass the North end of the bridge over the South Fork of Bayou Pierre, as another means of access to lands on both sides of the Parkway, owned by the Grantors herein, *532 and the above mentioned bridge will have a minimum of 8 feet vertical clearance on its North bank.
The terms used by the defendant (here the grantor) in its deed to the United States with regard to the cattle underpasses are:
* * * does hereby convey and warrant unto the United States of America, and its assigns, Grantee, subject to the hereinafter set out reservations, the hereinafter described lands, situated in Claiborne County, State of Mississippi, and more particularly described as follows:
(Here follows a particular description of the land conveyed.)
The State of Mississippi, Grantor, conveys the land hereinabove described, subject to the following easements and/or reservations in behalf of the owners of adjacent lands, former owners, and certain other persons, their successors, grantees and assigns.
(Here follows particular description of each easement and reservation, with the one pertaining to Cohn being as follows.)

 MAP NO. PARCEL NO. TO WHOM RIGHT IS RESERVED
 17 1 Mrs. Rose T. Cohn, Aubrey Cohn and
 Heiman Cohn, their heirs and/or assigns.

NATURE OF RIGHT

The right to use the following concrete structures as cattle passes: (Emphasis added.)
8 x 6 minimum opposite "P" line Station 397 ± 4 x 6 minimum opposite "P" line Station 425 ±, the right to use as an agricultural underpass the North end of the bridge over the South Fork of Bayou Pierre and the above mentioned bridge will have a minimum of 8 feet vertical clearance on its North bank and also the right to construct, use and maintain a fenced lane not over 16 feet in width connecting hereinabove mentioned structures and/or bridge from each side of the right-of-way, at their expense.
There is an obvious difference of terms in the quoted portions of the first and second deeds, leaving to be determined the legal significance, if any, resulting from the change. The change is one of emphasis. In the first deed the concrete structures were referred to as cattle underpasses. In the second deed the emphasis is directed to the right to use the concrete structures as cattle underpasses, though in both instances their location and numerical size are the same.
It is our opinion that the terms of the first deed created an express covenant running with the land as it is for the benefit of the adjacent lands and directly affects the lands conveyed. It is apparent that the parties to the first deed intended this, as absent the deed there is no contract between the parties. Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418, 68 A.L.R.2d 1013 (1958); 7 Thompson on Real Property §§ 3152, 3168 (1962). In Mendrop this Court, in addition to holding that a covenant running with the land was created by the deed considered in that case, also held that a grantee subsequent to the deed creating a covenant running with the land takes the property conveyed subject to the burden of the covenant though the same was not precisely set forth in the deed to him. There we stated:
* * * The 1955 deed from appellants to Harrell creating the covenant was on record at the time First Federal loaned its money to the McNairs and Buchanans, and took its deeds of trust. The lender had constructive notice of *533 the existence of the affirmative covenant. The deed from Harrell to McNair specifically referred to the 1955 deed; that from Harrell to the Buchanans did not. However, the 1955 deed nevertheless constituted constructive notice to First Federal of its terms and restrictions, because, "a subsequent grantee is required to take notice of a building restriction contained in the original deed, even though such restriction does not appear in the subsequent deeds." Thompson, Ibid., Sections 3616, 3614. A court of equity will enforce any acceptable agreement affecting land against a purchaser with notice of it. Ibid., Section 3615. In brief, First Federal's deeds of trust, with appellee Conaty as trustee, being later in time to appellants' recorded covenant, and First Federal having constructive notice of it, are subordinate to appellants' lien.
233 Miss. at 692-693, 103 So.2d at 425.
Without deciding whether the State had the initial authority to bind the United States to the covenant of the first deed, it is our opinion that by the acceptance of the second deed, with constructive notice of the first deed and its provisions, a promise by implication was imposed on the grantee to perform the covenant.[1] The prior deed being recorded, the subsequent grantee had constructive notice of it. In fact, it would be tenuous indeed to argue that it did not have actual notice, as the deed to it refers to the grantors in the first deed by name, land description, map, and parcel. We conclude that the variance in the terms of the second deed, of which the defendant was the scrivener, did exist as a fact, but in law the obligation imposed on the grantee in the former deed was not diminished as the former was incapable of being modified by the unilateral action of the defendant.
Assuming, but not deciding, that the provision, "it is further understood and agreed that the United States will construct the following cattle underpasses to lands on both sides of the Parkway owned by the grantors * * *" burdened the land with a servitude or easement and not a covenant running with the land, no rights of the plaintiffs are violated thereby as the second deed purports to convey such easement to the United States.
We are of the opinion that the allegations of the declaration with regard to the oral representations and reliance thereon were not well pled. We are also of the opinion that the terms in the first deed, an express covenant running with the land, could not be unilaterally changed by a subsequent grantor. We conclude, therefore, that the declaration does not state a cause of action and that the lower court erred in overruling the demurrer of the defendant.
Reversed and rendered.
GILLESPIE, P.J., and JONES, INZER, and ROBERTSON, JJ., concur.
NOTES
[1] Paragraph XI of the declaration indicates that the grantee accepted the covenant and built the structures according to the terms of the second deed.